**D. David COHEN, Intervenor–Appellant,**

**v.**

**Alvin VIRAY, Derivatively on Behalf of DHB Industries, Inc., Plaintiff–Appellee,**

David H. Brooks, DHB Industries Inc., Sandra Hatfield, Dawn M. Schlegel, Jerome Krantz, Gary Nadelman, Cary Chasin, Barry Berkman, Larry Ellis, David Brooks International Inc., Terry Brooks, Elizabeth Brooks International Inc., Andrew Brooks International Inc., Jeffrey Brooks, Tactical Armor Products, Inc., Defendants–Appellees.

**Docket No. 08–3860–cv.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 15, 2010.

Decided: Sept. 30, 2010.

Gary D. Sesser (William F. Sondericker, Laura Anne Reeds, and Christopher J. Young, on the brief), Carter Ledyard & Milburn LLP, New York, NY, for Intervenor–Appellant D. David Cohen.

Thomas G. Amon, Law Offices of Thomas G. Amon, New York, NY, and Brian J. Robbins, and Gregory E. Del Gaizo, on the brief, Robbins Umeda LLP, San Diego, CA, for Plaintiff–Appellee Alvin Viray, Derivatively on Behalf of DHB Industries, Inc.

Eric Rieder (David P. Kasakove and Chris M. LaRocco, of counsel, on the brief), Bryan Cave LLP, New York, NY, for Defendant–Appellee DHB Industries, Inc., now known as Point Blank Solutions, Inc.

Mark Holland (Mary K. Dulka, on the brief), Goodwin Procter LLP, New York, NY, for Defendants–Appellees Barry Berkman, Cary Chasin, Gary Nadelman, and Jerome Krantz.

Jerome Gotkin, Mintz Levin Cohn Ferris Glovsky and Popeo, P.C., New York, NY, for Defendant–Appellee David H. Brooks.

Steven G. Kobre (Francisco J. Navarro, on the brief), Kobre & Kim LLP, New York, NY, for Defendant–Appellee Dawn M. Schlegel.

Rachel Penski, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, for Defendants–Appellees David Brooks International, Inc., Elizabeth Brooks International, Inc., and Andrew Brooks International, Inc.

Edward Himmelfarb (Thomas M. Bondy, attorney, Appellate Staff Civil Division, Department of Justice, and David M. Becker, General Counsel, Richard M. Humes, Associate General Counsel, and Sarah E. Hancur, Senior Counsel, Securities and Exchange Commission, on the brief), for Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C. and Benton J. Campbell, United States Attorney, Eastern District of New York, Brooklyn, NY, for amicus curiae United States.

Ira A. Schochet (Nicole M. Zeiss and Mindy S. Dolgoff, on the brief), Labaton Sucharow LLP, New York, NY, and Samuel Rudman, Keith Park, and Sanford Svetcov, on the brief, Coughlin Stoia Geller Rudman & Robbins LLP, New York, NY, for amici curiae NECA–IBEW Pension Fund, RS Holdings Group, and George Baciu.

Before: HALL, LIVINGSTON, and CHIN,* Circuit Judges.

* At the time of oral argument, Judge Chin was a member of the United States District Court for the Southern District of New York, sitting by designation.

HALL, Circuit Judge:

On appeal, intervenor-appellant argues principally that the district court erred by approving the settlement of the shareholders' derivative litigation brought on behalf of DHB Industries, Inc. against a number of its former officers and directors because the settlement agreement impermissibly releases and indemnifies DHB's former Chief Executive Officer and Chief Financial Officer against all liability arising under § 304 of the Sarbanes–Oxley Act, 15 U.S.C. § 7243.[1] We agree.

## BACKGROUND

We recount only such facts as are necessary to explain our decision. In the fall of 2005, DHB Industries, Inc.'s ("DHB") stock price plummeted following revelations that the body armor manufactured by the company contained an inferior material prone to rapid deterioration. Numerous derivative and class action lawsuits were subsequently filed against DHB and a number of its former officers and directors. In January 2006, the United States District Court for the Eastern District of New York (Seybert, *J.*) consolidated the derivative actions and class actions and appointed derivative counsel and class counsel. The settlement of the consolidated derivative action ("the Settlement") is the subject of this appeal, though the Settlement is a joint settlement that settled both the consolidated derivative action and the consolidated class action.

In the district court, intervenor-appellant D. David Cohen and the Department of Justice Civil Litigation Division ("DOJ"), in consultation with the Securities and Exchange Commission ("SEC"), (DOJ and SEC collectively, the "United States"), presented objections to the Settlement. As relevant to our decision, Cohen and the United States objected to the provisions in which DHB agreed to release David H. Brooks, DHB's former Chairman and Chief Executive Officer ("CEO"), and Dawn M. Schlegel, DHB's former Chief Financial Officer ("CFO"), from any liability under § 304 of the Sarbanes–Oxley Act ("SOX"), 15 U.S.C. § 7243[2] (" § 304"), and to indemnify them against any liability they may incur under § 304.[3] Over these

---

**1.** The text of § 304 of the Sarbanes–Oxley Act ("SOX"), 15 U.S.C. § 7243, is set out below.

**2.** 15 U.S.C. § 7243 provides in full:

(a) Additional compensation prior to non-compliance with Commission financial reporting requirements

If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for—

(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2) any profits realized from the sale of securities of the issuer during that 12-month period.

(b) Commission exemption authority

The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

**3.** Section 1.27 of the Settlement provides in relevant part:

Released Derivative Claims includes, without limitation, a release by DHB of David H. Brooks and Dawn M. Schlegel, and each of them, from any and all liability under § 304 of the Sarbanes–Oxley Act of 2002 to reimburse DHB for any bonus or other incentive-based or equity based compensation received by them or either of them, or for any profits realized by them or either of them from the sale of any securities of DHB.

objections, on July 8, 2008, the district court entered final judgment approving the Settlement. The court subsequently entered an order granting derivative counsel's application for attorneys' fees and rejecting Cohen's application for attorneys' fees. This appeal followed.

### Procedural History

It was in December 2006 that the district court was first presented with the proposed Settlement, which had been agreed to by derivative counsel, class counsel, the named defendants, and DHB. The following month, Cohen moved to intervene in the consolidated class and derivative actions pursuant to Federal Rule of Civil Procedure 24(a)(2) and, *inter alia*, objected to preliminary approval of the proposed Settlement. Cohen subsequently filed a memorandum of law in opposition to that approval and, in May 2007, appeared at a court hearing held to review it. The court made a preliminary finding in favor of the Settlement and subsequently entered an order to that effect.

In September 2007, Cohen filed objections to final approval of the Settlement.

On October 1, 2007, DHB filed restated financial statements for 2003, 2004, and the first three quarters of 2005. Three days later, on October 4, 2007, the DOJ petitioned the district court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.*, for an extension of time to evaluate the proposed Settlement.

The following month, the United States filed objections to the Settlement, principally on the grounds that it: (i) limited the remedies available to the government in pending criminal cases against the individ-

ual defendants, and (ii) undermined efforts by the SEC to hold the individual defendants liable for disgorgement under § 304. In letters to the district court in December 2007 and June 2008, the United States Attorney for the Eastern District of New York expressed concern regarding its ability to seek restitution in connection with pending criminal cases and noted that Brooks' contribution to the Settlement was funded at least in part with the proceeds of insider trading.

In response to the United States' objections, the settling parties offered to add the following language to the Settlement: "Nothing contained in this Settlement is intended to limit the United States' ability to pursue forfeiture, restitution or fines in any criminal, civil or administrative proceeding." Brooks conditioned his acceptance of the proposed language on the addition of the phrase "except that ¶ 4.7 of the [Settlement] shall remain in full force and effect," thus seeking to ensure that Brooks and Schlegel were indemnified against liability under § 304. *See* n. 3, *supra.* Cohen and the United States continued to object to the Settlement.

In June 2008, the district court held a hearing for final approval of the Settlement. Cohen and the United States each appeared in opposition to the Settlement, and each reiterated the objections relating to § 304. As already noted, the court granted final approval of the Settlement, and on July 8, 2008, entered final judgment to that effect. Paragraph twelve of the final judgment provides that the Settlement includes a new paragraph 4. 10, which states, in part, that "[n]othing con-

---

Section. 4.7 provides in relevant part:

DHB shall indemnify defendants David H. Brooks and Dawn M. Schlegel, and each of them, against any liability under § 304 of the Sarbanes–Oxley Act of 2002 incurred by them, or either of them, in any action brought by a third party under § 304, and to pay to them, and to each of them, an amount equal to any payment made by them, or either of them, to DHB pursuant to any judgment in any such action.

tained in this Stipulation is intended to limit the United States' ability to pursue forfeiture, restitution or fines in any criminal, civil or administrative proceeding, except that Paragraph 4.7 of this Stipulation [regarding indemnification for § 304 liability] shall remain in full force and effect."

### Related Actions

On August 16, 2006, the United States Attorney for the Eastern District of New York filed a criminal indictment against Schlegel (DHB's former CFO) and Sandra Hatfield (DHB's former Chief Operating Officer) on charges that they inflated corporate earnings and profit margins, and then profited on those inflated earnings through the sale of DHB stock. *United States v. Dawn Schlegel, et al.*, No. CR–06–550, 2006 WL 4969569 (E.D.N.Y.2006). The next day, on August 17, 2006, the SEC filed a civil complaint against Schlegel and Hatfield in the Southern District of Florida based on the same underlying acts as were charged in the criminal matter. *SEC v. Dawn M. Schlegel, et al.*, No. CV–06–61251 (S.D.Fla.2006).[4]

On October 23, 2007, Schlegel pled guilty to conspiracy to commit securities and tax fraud. *Schlegel*, No. CR–06–550, Dkt. No. 82 (Oct. 23, 2007). The next day, on October 24, 2007, the United States Attorney for the Eastern District of New York filed a superceding indictment against Brooks and Hatfield related to the same underlying facts as were previously charged. *Id.* Dkt. No. 51 (Oct. 24, 2007).[5] One day later, on October 25, 2007, the

SEC brought a civil action against Brooks in the Southern District of Florida seeking disgorgement of $186 million under § 304. *SEC v. David H. Brooks*, No. CV–07–61526 (S.D.Fla.2007).[6]

## DISCUSSION

On appeal, Cohen principally asserts that the district court erred by approving the Settlement, awarding attorneys' fees to derivative plaintiffs' counsel, and denying his application for attorneys' fees. Because we hold that the indemnification and release provisions of the Settlement violate § 304, our discussion is limited to that single issue, and we decline to address the remaining issues argued on appeal.

■ As a preliminary matter, we note there is no merit to the suggestion that Cohen waived any objection to the Settlement's indemnification of Brooks against § 304 liability on the grounds that indemnification is violative of § 304 and public policy. As already noted, Cohen repeatedly raised objections on these grounds to the district court. Appellees' argument that Cohen's objections were untimely is precluded, moreover, as this argument was not made in the district court, and appellees do not assert that it is "necessary [that we nevertheless consider the argument] to serve an 'interest of justice.'" *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir.1994) (quoting *Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 822 (2d Cir.1984) (Friendly, *J.*)).

---

**4.** The civil action against Schlegel and Hatfield was administratively closed pending the disposition of the criminal charges filed against them in the Eastern District of New York. *Schlegel, et al.*, No. 06–61251–cv, Dkt. No. 8 (Nov. 3, 2006).

**5.** On September 14, 2010, after an eight-month jury trial, the two were convicted on a combined total of 31 out of the 33 charges

levied against them. Andrew Keshner, *Ex–Executives' Convictions Conclude 8–Month Trial*, N.Y. Law Journal, Sept. 15, 2010, at 1.

**6.** The civil action against Brooks was administratively closed pending the disposition of the criminal charges filed against him in the Eastern District of New York. *Brooks*, No. 07–61526–cv, Dkt. No. 16 (Dec. 12, 2007).

## Standard of Review

■ Although the district court normally has discretion to approve a settlement, we may review that court's decision *de novo* where an appellant's challenge to the authority of the district court to approve the settlement raises novel issues of law. *Gerber v. MTC Elec. Techs. Co.*, 329 F.3d 297, 302 (2d Cir.2003). This is such a case. We have not, and indeed no court has, yet addressed whether by private agreement parties may indemnify a CEO or CFO against liability imposed by § 304.

## SOX Section 304

### A

Before reaching the ultimate issue—*i.e.*, whether the Settlement's provisions releasing and indemnifying DHB's former CEO and CFO against liability imposed by § 304 violate that section—we must first determine whether § 304 provides a private cause of action. If it does, the SEC would have no claim that the Settlement usurps its sole authority to exempt persons from § 304 liability. *See* 15 U.S.C. § 7243(b).

The Ninth Circuit, the only other Court of Appeals to have directly confronted the issue, has held that no such private right of action exists. *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1233 (9th Cir.2008) ("[W]e conclude that section 304 does not create a private right of action."). The Court of Appeals for the District of Columbia addressed this issue in *dicta*, and came to the same conclusion—that no private cause of action exists. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines*, 534 F.3d 779, 793 (D.C.Cir.2008) (holding that defendant's directors' decision not to bring suit under § 304 for disgorgement by CEO and CFO was within the business judgment rule, as "§ 304 does not create a private right of action").

■ Since the plain language of the statute does not answer the question of whether a private right of action exists under § 304, we begin our inquiry by analyzing congressional intent. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir.2007).

> Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. Without a showing of congressional intent, a cause of action does not exist.... This Court must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.

*Id.* (citing *Alexander v. Sandoval*, 532 U.S. 275, 286–88, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)) (internal quotation marks and citations omitted). "[I]t is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 164, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). Section 304 by its terms requires CEOs and CFOs to reimburse their company for any bonus or similar compensation, .or any profits realized from the sale of company stock, for the 12-month period following a false financial report, if the company "is required to prepare an accounting restatement due to the material noncompliance of the [company], as a result of misconduct." 15 U.S.C. § 7243(a). It also permits the SEC to exempt "any person" from this mandatory duty, "as it deems necessary and appropriate." *Id.* § 7243(b). The statute makes no explicit provision of a private cause of action for violations of § 304. We therefore presume that Congress did not intend to create one. *See Bellikoff*, 481 F.3d at

116. Under § 3(b)(1) of SOX, moreover, the SEC has authority to enforce § 304 pursuant to its authority to enforce any provision of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(1). *See* 15 U.S.C. § 7202(b)(1).

A violation by any person of this Act, any rule or regulation of the Commission issued under this Act, or any rule of the Board shall be treated for all purposes in the same manner as a violation of the Securities Exchange Act of 1934 (15 U.S.C. 78a *et seq.*) or the rules and regulations issued thereunder, consistent with the provisions of this Act, and any such person shall be subject to the same penalties, and to the same extent, as for a violation of that Act or such rules or regulations.

*Id.*

As in *Bellikoff,* our presumption that Congress did not intend to create a private cause of action is supported by the text and structure of the statute at issue. *See id.* It is clear from the text of the statute that § 304 imposes a mandatory duty on those subject to it, *see* 15 U.S.C. § 7243(a) (CEO and CFO "*shall* reimburse" (emphasis added)), and that it vests the SEC with the authority to exempt any person from the obligation to reimburse the issuer under § 304(a), "*as it deems necessary and appropriate.*" *Id.* § 7243(b) (emphasis added). Congress thus provided *only the SEC* authority to exempt persons from § 304(a), indicating that only the SEC has that authority and that other parties do not. *See Sandoval,* 532 U.S. at 290, 121 S.Ct. 1511 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). Brooks' counsel conceded as much before the district court. *See* June 25, 2008 Hearing Tr. at 13:8–9 ("It's only the SEC that has the power to bring a 304 proceeding."). Other provisions in

SOX, moreover, do provide a private cause of action—*e.g.,* § 306 expressly creates a private cause of action to recover profits made by officers and directors from insider trading during pension fund blackout periods, 15 U.S.C. § 7244(a)(2). The inclusion of a specific provision to this effect elsewhere in the statute " 'suggests that omission of any explicit private right to enforce other sections was intentional.' " *Bellikoff,* 481 F.3d at 116 (quoting *Olmsted v. Pruco Life Ins. Co.,* 283 F.3d 429, 433 (2d Cir.2002)); *see also In re BISYS Group Inc. Derivative Action,* 396 F.Supp.2d 463, 464 (S.D.N.Y.2005). We therefore join our sister circuits in holding that § 304 does not create a private cause of action.

**B**

■ We now turn to whether the Settlement's provisions releasing and indemnifying DHB's former CEO and CFO against liability under § 304 violate that statute. Cohen argues that the indemnification and release provisions of the Settlement violate SOX and public policy "[b]ecause Congress vested authority to 'exempt' CEOs and CFOs from application of § 304(a) solely in the SEC, and did not grant such discretion to the public companies themselves," Appellant's Br. 25, and because the indemnification and release provisions "would nullify the right and remedy that Congress expressly provided in the statute," *id.* 27. The United States, as amicus, similarly asserts that the Settlement's release and indemnification provisions are illegal and effectively "[n]ullif[y]" the SEC's authority to pursue the § 304 remedy or to grant exemptions from the statute. United States Br. 18. We agree. The district court erred when it approved the Settlement's provisions requiring DHB to release and indemnify Brooks and Schlegel against any liability imposed under § 304.

As noted, only the SEC has authority to enforce § 304, *see* 15 U.S.C. §§ 78u(d)(1), 7202(b)(1), and to "exempt" CEOs and CFOs from liability under § 304, *see id.* § 7243(b). The Settlement's release and indemnification provisions attempt an end-run around § 304 that vitiates the SEC's role and is inconsistent with the law. If allowed to stand, it would effectively bar the relief the SEC is authorized to seek. It is true the SEC could order disgorgement. The terms of the indemnification agreement, however, would allow Brooks and Schlegel to pass that claim on to DHB so that they, individually, would suffer no penalty at all. The Supreme Court has held that agreements of private parties cannot frustrate the power of a federal agency to pursue the public's interests in litigation. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (holding that an individual's agreement with his employer to arbitrate claims is not binding on the EEOC in its own Title VII action); *see id.* ("[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief."). Here, the Settlement's release and indemnification provisions would accomplish exactly that, flying in the face of Congress's efforts to make high ranking corporate officers of public companies directly responsible for their actions that have caused material noncompliance with financial reporting requirements.

The SEC's decision to pursue § 304 relief is not solely intended to reimburse a company; it also furthers important public purposes. The § 304 remedy is an enforcement mechanism that ensures the integrity of the financial markets. As the Supreme Court recently observed, Congress enacted SOX in the wake of "a series of celebrated accounting debacles." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, —— U.S. ——, 130 S.Ct. 3138, 3147, 177 L.Ed.2d 706 (2010); *see also Carnero v. Boston Scientific Corp.*, 433 F.3d 1, 9 (1st Cir.2006) ("The Sarbanes–Oxley Act ... is a major piece of legislation bundling together a large number of diverse and independent statutes, all designed to improve the quality of and transparency in financial reporting and auditing of public companies."); S.Rep. No. 107–205 at 23 (2002), 2002 WL 1443523 ("[SOX] requires CEOs and CFOs to certify their companies' financial reports, outlaws fraud and deception by managers in the auditing process, *prevents CEOs and CFOs from benefitting from profits they receive as a result of misstatements of their company's financials*, and facilitates the imposition of judicial bars against officers and directors who have violated the securities laws." (emphasis added)). In sum, companies themselves do not have the authority effectively to exempt persons from § 304 liability.

Our holding is further supported by our jurisprudence addressing similar situations under comparable statutes. While no court has previously addressed whether a company may indemnify an officer subject to a § 304 remedy, courts have addressed indemnification against liability under other provisions of federal securities law and have concluded that indemnification cannot be permitted where it would effectively nullify a statute. For example, § 29(a) of the Exchange Act, 15 U.S.C. § 78cc(a), which provides that any "condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void," is instructive. This Court, citing § 29(a), has re-

fused to "give effect to contractual language ... purporting to be a general waiver or release of Rule 10b–5 liability altogether." *Vacold LLC v. Cerami,* 545 F.3d 114, 122 (2d Cir.2008); *see also Globus v. Law Research Serv., Inc.,* 418 F.2d 1276, 1288 (2d Cir.1969) (holding an indemnification agreement unenforceable when an underwriter was liable under § 11 of the Securities Act of 1933) ("[W]e concur in [the district court's] ruling that to tolerate indemnity under these circumstances would encourage flouting the policy of the common law and the Securities Act. It is well established that one cannot insure himself against his own reckless, wilful or criminal misconduct.").

## CONCLUSION

Because we conclude that the indemnification and release provisions of the Settlement violate § 304 of the Sarbanes–Oxley Act, 15 U.S.C. § 7243, we do not reach the question of whether the Settlement is substantively and procedurally fair, reasonable, and adequate. Nor do we reach the issues pertaining to attorneys' fees. The district court will need to reexamine those issues in any event, either in the context of a revised settlement or the outcome of further litigation.

For the foregoing reasons, the judgement of the district court is VACATED and the case is REMANDED to the district court for proceedings consistent with this opinion.